Case No. 25-1823 Rieth-Riley Construction Company, Inc. et al. v. Op Eng Local 324 et al. Argument not to exceed 15 minutes per side. Mr. Goodwin, you may proceed for the appellants. May it please the Court, my name is Phil Goodwin. I represent the plaintiff appellants. I would like to reserve three minutes for rebuttal, please. Very well. In this case, the plaintiffs have asserted ERISA claims to seek ERISA remedies against ERISA fiduciaries for breaches of ERISA's fiduciary duties regarding the management of ERISA plan assets in the course of administering ERISA benefit plans. It is an ERISA case. It involves core ERISA issues. And yes, it is true that it has a factual predicate that involves labor law. It arises out of a labor relationship. But that is true in every single ERISA case involving Taft-Hartley multi-employer benefit plans. They are statutory creatures that exist only at an intersection of labor law and ERISA. Every employer that has a contribution obligation to a Taft-Hartley benefit plan has one. Can you possibly speak up a little bit? I'm having a little bit of trouble hearing you. I'm not sure the microphone is picking you up. Is there a way for me to adjust? I'm not sure. I don't know. We'd have to ask the clerk if there's... I'm sorry, Your Honor. I will get closer to the mic and try to speak a little louder. Thank you. It's true in every ERISA case involving a Taft-Hartley benefit plan that there is a connection to labor law. Employers have contribution obligations to Taft-Hartley benefit plans only because they have a labor relationship with a union. These are collectively bargained benefits. But that doesn't mean that somehow when one of those ERISA disputes arises, a federal court cannot exercise the exclusive jurisdiction that Congress gave it to hear that ERISA dispute. And so in all ERISA cases, when there is a claim under ERISA, the federal court hears it. And that is true in this case for four very specific reasons. Well, what about the fact that the ERISA claims are completely dependent on having to prove that they were obligated by the National Labor Relations Act under the facts of this case to contribute to these fringe funds for the plaintiff and the union local while they continue to negotiate a new collective bargaining agreement? In other words, but for the operation of the National Labor Relations Act, the ERISA claims become somewhat beside the point. The whole context for these transactions is that the national labor policy under the NLRA statute has to be implemented. So otherwise we don't even address the ERISA claim. Yeah, that's right, Your Honor. There are two reasons. The first is that the plaintiffs in this case have not asserted an NLRA claim. They have asserted ERISA claims, and they have a right to do that. They have standing and a right to do that. NLRA remedies are not exclusive. The Supreme Court has held that repeatedly in the Connell line of cases, so Connell Construction, Kaiser Steel, Communication Workers v. Beck. Secondly, when you think about applying Garmin, it only applies when one of its two policy rationales is applicable. The first is the supremacy of federal law over state law to make sure that state law doesn't interfere with the uniform application of federal law. That policy basis is inapplicable because there is no state law claim in this case. The plaintiffs have asserted ERISA claims, not state claims. The second rationale is the primary jurisdiction doctrine, and this is what you were driving at, Judge Clay. Is this some sort of a labor matter that has been dressed up in ERISA clothing that really should be heard by the NLRB? And the answer to that is no, for two reasons. First, the NLRB does not have jurisdiction to hear anything under ERISA, and that by definition means it's not within its primary jurisdiction. Even if you were to entertain the hypothetical that what the plaintiffs have asserted here should be considered in substance to be an unfair labor practice, they can't assert that before the board either. Well, you know, your opposing counsel would argue that the plaintiffs' ERISA claims were preempted under the Garmin doctrine, and so we don't have to directly address the ERISA claim in the way that you're doing. The claim first has to prove that the National Labor Relations Act required it to contribute, and that, I guess, the defendant trustees breached its fiduciary duties under ERISA. But why is Garmin preemption not applicable in the factual context of this case? Because Garmin preemption cannot deprive a federal court of jurisdiction to hear a claim that Congress gave it jurisdiction to hear. We have asserted an ERISA claim. Can I pick up on Judge Clay's question? Yes, Your Honor. Here's how I'm understanding what you've asserted. It's an ERISA claim that has two possible theories. Number one is a necessary-to-receive-contributions theory. So what I mean by that is your theory of an ERISA breach of duty depends on the predicate that the funds were under a status quo obligation to accept the contributions. If that is your ERISA theory, then I think, to Judge Clay's point, that the ERISA fiduciary breach and the scope of the status quo obligation on the funds are one and the same. So that might be a situation where we want the NLRB to weigh in as to whether the funds indeed have a status quo obligation to accept the contributions. That's one theory. The other theory that I could understand the pleadings to support is that the only ERISA question is, once there are funds due and owing to the employees, ERISA kicks in, and because the funds are entitled to accept the contributions, they breach their duty by not doing so. The fact that Reith-Riley has to contribute under its status quo obligations is not a contested fact. Can we stay with the first theory, and can you explain why Judge Clay isn't exactly correct that Garmin preemption would apply? Yes, Your Honor. For what it's worth, the second theory is ours. The first theory, though, still doesn't implicate Garmin preemption because the NLRB has jurisdiction over no aspect of this dispute. The NLRB has jurisdiction to hear unfair labor practice charges. Those can be levied only against an employer or a union. There is no defendant in this case that is an employer or a union. So if you go to the Supreme Court's decision in Sears, for example, which includes an exhaustive analysis of why Garmin preemption does not apply when the NLRB does not have primary jurisdiction, it explains why. You have Section 7 and Section 8 of the NLRA, and what's being argued here is the terms and conditions of a collective bargaining agreement. That being said, I'm not sure I understand your contention that there's no labor law nexus under the applicable statute here. It's just that there's nothing the NLRB has jurisdiction to hear, which is the concern of Garmin. So if you look at the ruling from Sears, it stands for the proposition that for Garmin preemption to apply, the very same controversy that was presented in court must be capable of being presented to the NLRB. That's true of no aspect of this controversy. What source of law would dictate that it would be necessary for the funds, necessary and not okay, necessary for the funds to accept Reith Riley's contributions? What source of law would create that duty? The NLRA creates the duty, Your Honor. That's correct. But ERISA is an independent federal remedy. And so I think it is probably most helpful, Your Honor, to think about this case right through the Connell Construction line of cases. Take Kaiser Steel as an example. Multi-employer benefit funds sued under ERISA to compel contributions against purchased coal from Kaiser Steel. Kaiser Steel defended with two positions. That contribution obligation is illegal under the NLRA and it's illegal under the Sherman Act. So it put at issue a labor law issue under the NLRA. And what the Supreme Court held was we have an unflagging obligation to hear the ERISA claim. And if it requires us to hear the NLRA component of the defense to decide the ERISA claim, we have jurisdiction to do that. It's consistent with the Supreme Court's decision in Lexmark, for example, which is that there is no prudential matter under which a federal court can decline to exercise jurisdiction over a matter that Congress has given it jurisdiction. And the problem here, if you look at the effect of the district court's order, it means that no federal law has any effect in any forum. Because only federal courts can hear ERISA claims and the plaintiffs cannot assert any NLRA claim before the board because no defendant in this case is the proper subject of a charge. I thought they would, wouldn't your theory be before the board that, you know, Section 8, unfair labor practice applies to unions and their agents? No, they're not agents. We've sued them only in ERISA capacities. In fact, the point we make in our briefs, Your Honor, is that they're not union agents. They're benefit funds and trustees who have acted in their trustee or ERISA capacities. They're not agents of the union, which is why we can't sue them before the NLRB. The obligation to make the contributions to these fringe funds is governed by the National Labor Relations Act itself. And while that contribution is going on, the issue that we look at under the statute is whether the payments have to continue while a new collective bargaining agreement is being negotiated. In other words, this is quintessentially a labor law matter. And the ERISA claims are dependent on proving that they were obligated by the, that there was an obligation to make these contributions under the National Labor Relations Act, which is why I'm having trouble with your argument that this is purely an ERISA matter not governed by the labor laws. It just doesn't compute. I mean, the whole dispute has arisen out of this collective bargaining agreement and whether there's an obligation to continue to make these payments while the, on a continuing basis, while the collective bargaining agreement is being renegotiated. And without these payments pursuant to the, without this payment obligation under the labor law, you don't even have an ERISA claim because there wouldn't be any money that needed to be protected under ERISA. So, you know, your whole argument, therefore, seems to be not taking account of all these factors. May I answer, Your Honor? I'm out of time. Go ahead. It's right that for ERISA's fiduciary duties to be implicated in this case, you have to accept that Ruth Riley's contributions are due and owing to the fund and, therefore, have become ERISA plan assets. They are, they belong to the funds. That's true. You also have to understand, then, that federal courts have jurisdiction to decide labor law matters under the NLRA. The Garment Doctrine stands only for the very narrow proposition that courts should defer to the NLRB on those matters that the NLRB actually has jurisdiction to hear. And so the problem with the district court's analysis is that it blows up all of it. No court or the NLRB can hear any aspect of the case because there's nothing the plaintiffs can present to the NLRB. It's fully inconsistent with the policy bases for the Garment Doctrine. Well, this case is on appeal from the district court, is it not? It is, Your Honor. In other words, the district court is interpreting labor law here. It's not a matter that the NLRB can or cannot hear the case. There are assignments of error to the district court's interpretation of labor law, and that's what's on appeal. Your Honor, I think it's probably helpful also to look back. This is the second round of ERISA litigation between these parties. In the first round, there were four opinions issued, two by the district court, two by the Sixth Circuit Court of Appeals. In every single one of those opinions, there was either a factual finding or an acknowledgement by the court that Reith Riley has a 9A relationship with Local 324, that Reith Riley has a status quo obligation to make contributions to the funds, and that the funds have an obligation to accept those contributions. If it was possible in the first case for the court to decide the funds ERISA claims and acknowledge the sheer undisputed fact of Reith Riley's 9A relationship and its status quo contribution obligation to decide that case, I don't know how it's different here. These are undisputed facts. There's nothing the NLRB needs to decide. And importantly, under the Independent Federal Remedy Exemption, if that's what's required for a court to hear and decide an ERISA claim over which it has exclusive jurisdiction, it can do so. Thank you. Thank you. We'll hear from the other side. May it please the Court. Daniel Levan for the Appley Funds and Trustees. I submit this case is a straightforward application of the Garmon Doctrine. For one thing, the plaintiffs chose to specifically plead NLRA duties as the basis for liability. And on top of that, the subject matter clearly implicates the NLRA and the status quo duty as the basis for the ERISA claim. If we look to the Supreme Court's advanced lightweight decision, that was an ERISA claim by the fund brought in that case. Counsel, have you ever contested in any piece of litigation that there's a status quo obligation on Reith Riley's part to contribute to the employees? No. OK, so the only possible fact the NLRB would decide would be an uncontested fact that if Garmon is a primary jurisdiction doctrine about routing certain labor law questions to the NLRB in the first instance, one sentence does it make to route the question that has never been disputed by these parties in this litigation, in which the NLRB, the ALJ in 2024 already accepted and the NLRB affirmed that there was a status quo contribution obligation. I have not found any Garmon case applying Garmon in that type of context. The fund has not disputed that the employer has a status quo obligation. The point is that the fund does not have a status quo obligation under the labor law rules. And it's important to note here, the funds did not kick Reith Riley out of the funds. The funds did not say Reith Riley may not participate. The situation arose because the fund trustees established a rule that employers, all employers need to be... That's the merits of the ERISA claim, though, right? That's getting to why whether or not the funds could appropriately reject or decline to accept contributions for ERISA purposes. What I'm asking about is this threshold issue. I hear you. You heard my questions to the other side, which I think this case, at least for me, how I'm thinking about it comes down to, which is there's two theories of ERISA violation. One rises and falls with, like you said, whether the funds have a status quo obligation under the NLRA. The other, though, and the one I'd like you to focus on, is this, what I'm calling the entitlement theory, which is we all agree there's a status quo obligation on Reith Riley's part. Not contested. The question is, once those funds are due and owing to the employees, does it violate ERISA for the funds to decline to take ownership or acceptance over the contributions? And on that theory, what is the live labor law question that this case implicates? Under the facts, there's no obligation at this point to accept the contribution because Reith Riley has refused to comply with this rule established by the trustees. That's a merits question under ERISA. What is the NLRA question that on the entitlement theory that I discussed is that a federal court would need to decide to dispose of the ERISA claim? If that were sitting there totally independent on its own, maybe that's something that a court could decide. But in this case, they've specifically raised the NLRA issue and the status quo issue, and they're intertwined. It's specifically pled, and it's specifically part of their claims. And so it was a pleading choice on their part to make it part of this case. And I submit they're trying to buttress their arguments with the status quo duty. And if we get to the merits, if we were to get to the merits, the fund is going to say funds have a right to establish a participation agreement requirement. The funds established this new requirement for a participation agreement and submitted it to Reith Riley. They refused to sign, and in that situation, the trustees are entitled to refuse the contributions. And under the case law and under the rules, the question is whether the trustees' action would be arbitrary and capricious. I understand that there's a lot of history between the parties and that you want to defend your position on the merits of whether the funds acted appropriately. But this was dismissed for lack of subject matter jurisdiction and ERISA claim in federal court. And so I'm trying to focus in on the jurisdictional piece. And I don't understand how if the only question is whether Reith Riley has a status quo obligation to contribute to the employees, why that's not both kind of res judicata as well as impractical to ever get before the board because Reith Riley would have to sue itself to establish whether there's a status quo obligation. I don't understand how that could happen. I don't think it would have to sue itself. As you indicated in your questioning, there are ways an employer can bring a fund into a case. There are NLRB cases that have the fund as a party. But I would also point out that there already is currently pending a board charge by the union against Reith Riley relating to the subject matter. And Reith Riley put it in their briefs below that after they ceased the contributions were no longer coming in, that the union brought an unfair labor practice charge that Reith Riley refused, failed to give them notice, and an opportunity to bargain over the issue. Okay. Do you dispute that in 2024 there is an ALJ decision that was then affirmed by the board that said the status quo under the road agreement was for those contributions to be made to the funds? The NLRB decided that issue, right? I believe so. Okay. Isn't that under the entitlement theory? I hear you on the theory that the funds were statutorily obligated to accept the contributions. I'm setting that to the side. On the entitlement theory, isn't the only issue, if we're in primary jurisdiction world, the NLRB already decided the only issue of Reith Riley's status quo contribution obligation. If it's purely the entitlement theory, that may make Garmin go away. But it is part of this case. They are trying to buttress their argument based on the status quo duty. On the argument that the fund has a federal law obligation to accept them. I mean, it goes to the mayor. I think that's a problem with the way they pled the case, particularly below. So I hear you on that. And I think that's what the main problem is. They specifically pled it that way, and they're trying to buttress their claims with the NLRA status quo duty. And I would submit that without that status quo duty backing up their claims, without their ability to say, funds, you're required under federal law. The duty applies to you to accept these. You have to accept these without any conditions. You can't require us to sign a participation agreement because you have an absolute duty to accept them no matter what. I think that's what they're trying to say here. And we think that's not the case. Because we don't think the duty applies to the fund. We think the fund established a reasonable rule, which they failed to comply with. And the fact that they specifically pled the case with that status quo duty to buttress their claims and provide that additional foundation, that's the problem here. It's their pleading decision that triggers garment. So it's without prejudice dismissal, right? Correct. And they should just file a new complaint pleading the entitlement only theory, and we are going to be back here again in two years? It would depend on how they plead the case. But they pled it very clearly. They pled it very clearly in a way that relies on the status quo duties. And the independent federal remedy doctrine that plaintiff's counsel argues clearly doesn't apply. In those cases, the plaintiffs don't bring their claims based on the NLRA or based on duties arising from the NLRA. In all those cases, the plaintiff's claims are based on straight federal law, like a state contract claim or state trespass claim. And the issue might be brought up as an affirmative defense, but it's not a foundational part of the plaintiff's claims. Here the district court specifically expressly found that the plaintiff's claims were grounded in the NLRA status quo duty. And it's in those circumstances, it's because of that in particular, that garment is implicated. I would also point out that the fact that garment is implicated and the board makes the decision does not completely deprive the courts of jurisdiction over the matter, that whatever the board rules is appealable to the Sixth Circuit. It's about who has primary jurisdiction. This NLRA duty, the status quo duty, whether it applies to the funds and specifically what it requires of the funds if it does apply, is a decision to be made in the first instance by the board under the rationale for garment, which is having a uniform labor policy throughout the country and to have the body with the expertise in labor matters make that decision in the first instance. So most of their arguments rely on these cases, the independent federal remedy doctrine, which requires that there's merely an incidental or collateral reference to labor law. And here the claims are grounded in the NLRA status quo duty and under established precedents such as advanced light weight. We believe it's clear garment applies and the district court's decision was correct. I don't have anything to add unless there are further questions. Apparently not. Thank you very much. Thank you. Do we have any rebuttal? Thank you, Your Honor. There are four rebuttal points I'd like to make. First, regarding pleading. The plaintiffs in this case did not plead any facts about the party's status quo duties. They didn't come straight out of one of the four opinions from the party's prior ERISA litigation. So we didn't add anything that wasn't already part of the ERISA litigation history. Every fact about the contribution obligation is a fact that this court or the district court had already accounted for once in deciding ERISA claims. Second, Mr. Levin's argument made abundantly clear that the funds and the trustees in this case have raised the NLRA as a defense to our ERISA claims. Again, that puts us squarely in the Supreme Court's line of authority under Connell, Kaiser, and Steele, or Beck. Any time it's required to resolve a labor law issue to decide a claim that's been pled under an independent federal remedy, the court has jurisdiction. Third, Mr. Levin brought up the advanced lightweight decision. There's a special point about that case that I think it's worth noting. As you can probably imagine, we've done a lot of work in these cases. We've read a lot of cases. Except for the district court's decision in this case, to the best of my knowledge, advanced lightweight may be the only decision that applies Garmin preemption to an ERISA claim. And it's for a very peculiar reason, unique to the factual setup in that case. The funds there actually asserted a lawsuit where the only alleged legal violation was an NLRA violation. And because the funds were plaintiff and an employer was a defendant, the funds were actually in a situation to take the very same controversy and present it to the board. They actually had an unfair labor practice charge. In addition, the remedy they sought to enforce that labor law violation under was 515, which the court held applies only to contractual contribution obligations, not statutory contribution obligations. So there wasn't actually an independent federal remedy that was implicated by the claims in the case. Finally, Mr. Levan raised one other point that I think was somewhat central to the district court's view of this, which was that under the independent federal remedy exemption, when a labor law issue is collateral, it must mean it's unimportant. That's not what the Supreme Court cases say. Collateral means separate. So if you've brought a claim under a separate federal law, a claim other than the NLRA, if the court has jurisdiction to hear that other federal claim, any NLRA issue that arises is collateral because it is separate and the court has jurisdiction to hear that other claim. Thank you very much.